IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| KIMBERLEY RUMBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 09-5089-CV-SW-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, et seq. Pursuant to 42 U.S.C. § 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). <u>Wiseman v. Sullivan,</u> 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. <u>Id.</u> Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. <u>Polaski v. Heckler,</u> 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in <u>Polaski</u>. The ALJ must give full consideration to all of the relevant evidence on the <u>Polaski</u> factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. <u>Haynes v. Shalala</u>, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was 25 years old at the time of the hearing before the ALJ. She alleged disability because of club foot deformity, morbid obesity, asthma, and Attention Deficit Hyperactivity Disorder ["ADHD"]. She has an eighth grade education, and past relevant work in the fast food industry for three or four months in 2002.

According to the testimony at the hearing, plaintiff stated that she had to quit working because of swelling in her feet and legs, and not being able to stand as long as her employer wanted. She testified that she suffered from lymphodema in the lower legs and feet, asthma, high blood pressure, high cholesterol, chronic pain, and muscle spasms throughout her body. Her feet swell anytime she stands more than ten minutes. She has had problems with swelling ever since she was little. She has to lie down during the day with her legs propped up five to ten times a day, for 30-45 minutes at a time. She also takes Lasix, but neither works very well. She was told by a nurse practitioner that compression stockings probably would not help because of having had surgery on her feet when she was a child. She has shortness of breath because of her asthma. Cold and hot temperatures, as well as walking in general, cause shortness of breath, and this also happens after standing for 15 to 20 minutes. Plaintiff testified that she can sit about 30 minutes before her legs start swelling. She has pain in her knees, legs and back every day. She also has muscle spasms, for which she takes medicine or hot baths. Plaintiff testified that she also suffers from ADHD , and she gets "hyper" or jumpy once or twice a day. [Tr. 367]. This lasts about an hour. It does not affect her thinking, but sometimes she can't concentrate. She also suffers from depression, and gets sad around holidays and her children's birthdays. She takes medicine for high blood pressure, but has started to feel dizzy and lightheaded on her

current medication. The heat affects this. She takes Ibuprofen 600 milligrams three times a day, Lasix, Flexeril, Aspirin, Prozac, Potassium Chloride, Simvastatin, and Advair, and uses an Albuterol inhaler.

Dr. Lyons, a medical expert, testified at the hearing. It was his testimony that plaintiff met a listed impairment under Listings 1.02 and 1.03.

The ALJ found that plaintiff had not engaged in substantial gainful employment since April 2, 2004, the application date. She further found that plaintiff suffers from the following severe impairments: "status post club fee repair; obesity and asthma." [Tr. 8F]. She found that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. The ALJ considered Listings 1.02 and 1.03, and found that plaintiff did not meet these because there is no medical evidence that she has the inability to ambulate effectively, nor did she have reconstructive surgery, as required under Listing 1.03. Based on the limitations that the ALJ found severe, she concluded that plaintiff had the RFC to perform less than light work; that she had push/pull limitations of the low extremities, and could not stand or walk for more than 15 minutes at a time; that she could balance occasionally, but could not climb, and should avoid temperature extremes, wetness, fumes, heights, and hazards. She also limited her to lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing 10 pounds, which is consistent with light work. After consulting the vocational expert, the ALJ found that plaintiff could not perform her past relevant work, but that she could perform a limited range of unskilled, light work, such as production worker, call-out operator, and general office clerk. Therefore, the ALJ found that she had not been under a disability since the date the application was filed.

Plaintiff contends that the ALJ erred by failing to find that her ADHS is a severe impairment; that she erred by failing to give significant weight to the opinion of the medical expert, Dr. Lyons; that she failed to follow the proper methodology in deriving the Residual Functional Capacity ["RFC"] by failing to incorporate sufficient limitations related to her severe impairments and failing to consider all the evidence; and that she erred by failing to conduct a proper, explicit credibility analysis.

The ALJ concluded that, regarding plaintiff's alleged mental impairments, she did not have a severe mental impairment or any functional limitations. She based this finding on the conclusion of Dr. Hughes, a family practice physician, who evaluated her in April of 2006. It was Dr. Hughes' opinion that while plaintiff may have a mental problem and may have ADHD, these impairments would not affect her capabilities for daily living. Plaintiff did receive a full psychological evaluation from Dr. Brooks, in 2007. He found that, based on all the clinical findings, plaintiff did not qualify for medical assistance or general relief, and that her emotional disturbance was not severe enough to preclude her from working. The ALJ relied on these opinions, as well as those of Dr. Black, and the psychiatric exam by Dr. Kenneth Burstyn, performed in 2004, which concluded that plaintiff had no severe mental impairment and no functional limitations. Additionally, she relied on the psychiatric exam by Dr. Bland, who found that the medical evidence supported a finding that plaintiff was in the average intelligence range, and that she had no medically determinable impairments.

In reviewing the medical records, the Court concludes that the ALJ did not err in finding that the ADHD was not a severe impairment. Dr. Burstin's Psychiatric Review Technique Form indicated that plaintiff did not have any functional limitations; that she did not

5

have any overt signs or symptoms of ADHD; that her activities of daily living were not reported to be limited by mental factors; and that claimant "denies problems following directions, and denies problems interacting." [Tr. 247]. He concluded that her mental impairment[s] were not severe. Dr. Bland examined her in 2006 and found that she had "no significant restrictions in daily activities in regard to he alleagations [sic] of ADHD." [Tr. 287]. Dr. Brooks conducted the only psychological evaluation in the record, and gave the diagnostic impression of depression, anxiety and ADHD, although he did not opine that this would keep her from working. He noted that plaintiff said she had quit her only job because her co-workers did not like her after she was charged with child endangerment, and she was being sexually harassed. In terms of the results of the MMPI-2, he noted that there were a high number of "fake-bad" responses, which is consistent with someone attempting to present themselves with more psychological distress than they are actually experiencing. [Tr. 346]. He noted that her "test scores indicate that she may appear unusual and eccentric to others, but be able to maintain an adequate social and vocational adjustment." [Tr. 348]. He found that her "emotional disturbance is not of the severity or magnitude sufficient enough to preclude her from performing an occupation." [Id.].

Based on the record as a whole, the Court cannot say that the ALJ erred in not finding the ADHD to be a severe impairment. She found that in daily living activities, plaintiff had no limitation; that in social functioning she had mild; in concentration, persistence and pace, she had mild; and in episodes of decompensation, she had none. The ALJ concluded that "[b]ecause her medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' limitation in the fourth area, it is non severe." [Tr. 8G].

6

The Court finds there to be substantial evidence in the record as a whole to support this conclusion. It is clear that for most of the relevant time period, plaintiff was not taking medication or receiving treatment for ADHD. It is apparent that her mental status was reviewed several times and that she had a full psychiatric examination and testing, which supports a finding that there was no indication that ADHD was a severe impairment.

Additionally, the Court finds that the ALJ did not err in the weight he gave to Dr. Lyons' opinion. It is plaintiff's contention that the opinion of a designated expert regarding whether a claimant meets or equals a listed impairment must be given appropriate weight. It is argued that the ALJ must "accept the findings made by a physician 'designated by the Commissioner' as expert opinion evidence." Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 978 (8th Cir. 2003). Plaintiff argues that Dr. Lyons is the only physician who reviewed all relevant records and heard her testimony at the hearing, and that the ALJ committed reversible error by failing to apply the proper analysis to Dr. Lyons' opinion.

In this case, Dr. Lyons testified that he reviewed all of the medical records; he opined that plaintiff's clubfeet had been over-corrected and that she had several deformities, but that she had gotten around fairly well for a number of years, until her obesity considerably complicated the issue. When combining the clubfeet with obesity, he testified that she would equal pediatric listing 101.02(A). He also testified that when he combined all of her issues, including asthma, hypertension and ADHD, she would equal a listing.

Plaintiff contends that the ALJ did not conduct the proper analysis when she weighed Dr. Lyons' opinion because it is not inconsistent with other evidence of record. The Court has reviewed all the medical evidence of record, however, and concludes that the ALJ did not err in

the weight she gave to Dr. Lyons' testimony. She found that when Dr. Lyons, an orthopedist, testified that if plaintiff were presumed to suffer from ADHD, then her impairments, taken in combination, could equal listings 1.02A and 1.03, this finding was outside the expertise of the expert. She noted that, contrary to Dr. Lyons' opinion, no medical consultant had concluded that plaintiff could not ambulate, which was required under both listings. The ALJ also concluded that the doctor did not adequately consider the entire record; a review of his testimony at the hearing would tend to support that conclusion. Additionally, upon questioning at the hearing, the expert stated that plaintiff could perform sedentary work, which is inconsistent with his opinion that she met a listed impairment.

The ALJ specifically addressed the listed impairment referred to by Dr. Lyons, and concluded that plaintiff did not meet either Listing 1.02 or 1.03. It is apparent from the record as a whole, including the medical records and plaintiff's testimony, that the ALJ correctly concluded that there was no medical evidence to support a conclusion that plaintiff has the inability to ambulate effectively, and that Dr. Lyons' opinion that she met a listed impairment was not given significant weight "as the opinion conflicts with the substantial evidence of record, documenting less severe limitations." [8J]. The ALJ observed that even Dr. Lyon stated that plaintiff's obesity, which complicated the clubfoot condition, would not limit her ability to perform sedentary work. Regarding plaintiff's obesity, she found that "claimant's obesity does adversely affect her musculoskeletal functioning, as well as her physical endurance and exertional capacity." [Tr. 8H].

Although plaintiff contends that there are some opinions that are consistent with those of Dr. Lyons, the Court has carefully reviewed the medical records, and finds that the ALJ's

8

decision to not give great weight to his opinion is supported by substantial evidence in the record. While there is support for the conclusions that plaintiff suffers from limitations due to her club feet and obesity, in particular, these limitations were taken into consideration in the RFC assessment. Because she reviewed all the medical evidence of record, and relied on the records that were the most consistent, the Court finds that the ALJ did not err in the weight she gave to the medical opinion of Dr. Lyons, which was inconsistent with the medical evidence as a whole.

Turning next to the ALJ's credibility determination, the ALJ found that plaintiff's subjective complaints were not entirely credible. The law is clear that "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Homstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). While an ALJ who discredits a claimant's subjective complaints must make an express credibility determination explaining the reasons for doing so, Singh v. Apfel, 222 F3d 448, 452 (8th Cir. 2000), the law does not require that the ALJ explicitly discuss each factor. Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010). Rather, it is sufficient if the ALJ acknowledges and considers the factors before discounting subjective complaints. Id. at 932. The ALJ's credibility determination is entitled to deference if it was based on several valid reasons. Id.

A full review of the record leads the Court to the conclusion that there is substantial evidence to support the ALJ's decision to only partially credit plaintiff's testimony. The ALJ found that plaintiff's claims that she was disabled and could not work were not supported by the medical evidence; and that her daily activities belied her allegations of being totally disabled. She found that plaintiff's complaints regarding the intensity, persistence and limiting effects of

her symptoms were not credible to the extent they are inconsistent with the RFC assessment. The Court also notes that, while plaintiff testified that she could not work because of problems with her legs swelling, her work record consists of only three or four months of employment at a fast food restaurant in 2002. Additionally, she apparently told Dr. Brooks that she quit her job because she did not get along with her co-workers, that they didn't like her because DFS was involved with taking her children away, and that she had problems with sexual harassment. Plaintiff also provided information regarding daily activities that are not entirely consistent with the extent of her subjective complaints. A review of the record also indicates that plaintiff does not suffer from a mental disorder that would constitute a severe impairment. Based on the record as a whole, there is not medical evidence in the record to support plaintiff's allegations that her health issues are wholly disabling. Further, in finding that plaintiff could only perform a limited range of light work, the ALJ clearly gave credence to some of her testimony.

Regarding the ALJ's RFC finding, a review of the record indicates that the ALJ properly considered all of plaintiff's impairments in assessing the RFC. A review of the RFC, which delineates functional and nonfunctional limitations, indicates that the ALJ took into consideration the credible, medically supported evidence in the record to assess plaintiff's RFC, and considered her severe impairments in her RFC finding. She relied on the Physical Residual Functional Capacity Assessments by two state agency consultants to reach her conclusions regarding the RFC, and incorporated additional limitations for light work based on restrictions due to her club feet, asthma, and obesity. The Court finds that, based on the record as a whole, there is substantial evidence in the record to support the ALJ's determination that plaintiff's impairments did not meet or equal the requirements of a listed impairment, and to support the

RFC determination.

Based on the record before it, the Court finds that the ALJ's decision is supported by substantial evidence in the record. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 2/24/11